AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

**FILED**

MAR 0 4 2020

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.  2 0 M J 0 9 8 7 |
| AT6 GPS Device | ) | |
| IMEI No. 353549090836106 | ) | |
| (Target Device 2) | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____Southern_____ District of _____California_____ *(identify the person or describe property to be searched and give its location):* See Attachment A-2 (incorporated herein)

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* See Attachment B-2 (incorporated herein)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of __21__ U.S.C. § _952, 960, 963_ , and the application is based on these facts: see attached affidavit of Special Agent Stirling Campbell, Homeland Security Investigations

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Stirling Campbell/Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/4/2020

_____
*Judge's signature*

City and state: San Diego, CA

Linda Lopez, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

I, Special Agent Stirling Campbell, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.     I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

> One Black Huawei Z2 Smart Phone w/ Crack Glass Back
> Seized as FP&F No. [2020-2506-000464-01]
> **(Target Device 1)**
>
> AT6 GPS Device
> IMEI No. 353549090836106
> Seized as FP&F No. [2020-2506-000464-01]
> **(Target Device 2)**

as further described in Attachment A-1 and A-2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960 and 963 **(the Target Offenses),** as further described in Attachment B-1 and B-2.

2.     The requested warrant relates to the investigation and prosecution of David TORRES-Paz for importing approximately 21.94 kilograms (48.27 pounds) of methamphetamine from Mexico into the United States.  The **Target Devices** were seized by Customs and Border Protection Officers at the Otay Mesa, California Port of Entry and are currently held by Homeland Security Investigations at 880 Front Street, Suite 3200, San Diego, CA 92101.

3.     The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all the information known by me or other agents regarding this investigation.  All dates and times described are approximate.

**BACKGROUND**

4.     I have been employed as a Special Agent with Homeland Security

1

Investigations (HSI) since October 2005. I am currently assigned to the HSI Office of the Special Agent in Charge, in San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

5.    During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California.  Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

6.    I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones.  A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles that enter the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry.  With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual ("the driver") responsible for driving the vehicle containing the concealed narcotics into the United States.  These communications can occur before, during and after the narcotics are imported into the United States.  For example, prior to the importation, narcotics traffickers frequently communicate with the driver regarding arrangements and preparation for the narcotics importation.   When the importation is underway, narcotics traffickers frequently communicate with the driver to remotely monitor the progress of the narcotics, provide instructions to the driver and warn accomplices about law enforcement activity.  When the narcotics have been imported into the United States, narcotics traffickers may communicate with the driver to provide further instructions regarding the transportation of the narcotics to a destination within the United States.

7.     Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

8.     This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a.     tending to indicate efforts to import methamphetamine, cocaine, or some other federally controlled substance, from Mexico into the United States;

    b.     tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, cocaine, or some other federally controlled substance, from Mexico into the United States;

    c.     tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, cocaine, or some other federally controlled substance, from Mexico into the United States;

    d.     tending to identify travel to or presence at locations involved in the importation of methamphetamine, cocaine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.     tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

3

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

9.     On February 22, 2020, at approximately 2:35 p.m., defendant David TORRES-Paz ("Defendant") and Laura HERNANDEZ-Flores applied for permission to enter the United States at the Otay Mesa Port of Entry. TORRES-Paz was the driver of a 2012 Chevrolet Cruze and Laura HERNANDEZ-Flores, was the passenger.

10.    TORRES-Paz and HERNANDEZ-Flores were referred for secondary inspection, and Customs and Border Protection Officers discovered 45 packages concealed in the rear doors and rear quarter panels of the vehicle. The packages weighed approximately 21.94 kg (48.27 lbs.), and field-tested positive as methamphetamine. **Target Device 1** was found in TORRES-Paz' possession and **Target Device 2** was found mounted with a magnet under the intake air box in the engine compart of the vehicle.

11.    Later, agents read TORRES-Paz his *Miranda* rights, and he agreed to speak to agents without an attorney present. TORRES-Paz stated that he and his wife were traveling to Central Los Angeles to go shopping in alleys where people sell goods. TORRES-Paz denied knowledge of the narcotics found in the vehicle. TORRES-Paz acknowledge that he had a phone in his possession and that it matched the description of **Target Device 1**.

12.    Based upon my training and experience, there is probable cause to believe that TORRES-Paz was using **Target Device 1** to communicate with others to further the importation of illicit narcotics into the United States; and probable cause to believe that **Target Device 2** was being used as a tracking device to further the importation of illicit narcotics into the United States.

13.    In my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to

1  attempt to communicate with a defendant after their arrest to determine the whereabouts of
2  the narcotics.  Based upon my experience and training, it is also not unusual for individuals
3  such as the Defendant, to attempt to minimize the amount of time they were involved in
4  their smuggling activities and for the individuals to be involved for weeks and months
5  longer than they claim.  Accordingly, I request permission to search the Target Devices for
6  data beginning on January 23, 2020, up to and including February 22, 2020.

7                                            **METHODOLOGY**

8          14.    It is not possible to determine, merely by knowing the cellular telephone's
9  make, model and serial number, the nature and types of services to which the device is
10  subscribed and the nature of the data stored on the device. Cellular devices today can be
11  simple cellular telephones and text message devices, can include cameras, can serve as
12  personal digital assistants and have functions such as calendars and full address books and
13  can be mini-computers allowing for electronic mail services, web services and rudimentary
14  word processing. An increasing number of cellular service providers now allow for their
15  subscribers to access their device over the internet and remotely destroy all of the data
16  contained on the device. For that reason, the device may only be powered in a secure
17  environment or, if possible, started in "flight mode" which disables access to the network.
18  Unlike typical computers, many cellular telephones do not have hard drives or hard drive
19  equivalents and store information in volatile memory within the device or in memory cards
20  inserted into the device. Current technology provides some solutions for acquiring some of
21  the data stored in some cellular telephone models using forensic hardware and software.
22  Even if some of the stored information on the device may be acquired forensically, not all
23  of the data subject to seizure may be so acquired. For devices that are not subject to forensic
24  data acquisition or that have potentially relevant data stored that is not subject to such
25  acquisition, the examiner must inspect the device manually and record the process and the
26  results using digital photography. This process is time and labor intensive and may take
27  weeks or longer.

28

15.     Following the issuance of this warrant, I will collect the **Target Devices** and subject it to analysis. All forensic analysis of the data contained within the **Target Devices** and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

16.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

17.     Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

### CONCLUSION

18.     Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Devices** will yield evidence of TORRES-Paz' commission of violations of Title 21, United States Code, Sections 952, 960 and 963.

19.     Because the **Target Devices** were seized at the time of TORRES-Paz' arrest and have been securely stored since that time, there is probable cause to believe that evidence continues to exist on the **Target Devices**.

20.     Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item(s) described in Attachment A-1 and A-2 and seize the items listed in Attachment B-1 and B-2 using the above-described methodology.

1  I swear the foregoing is true and correct to the best of my knowledge and belief.

2

3

4  Special Agent Stirling Campbell
   Homeland Security Investigations

5

6  Subscribed and sworn to before me this _____ day of March, 2020.

7

8  _____

   Honorable Linda Lopez
9  United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTACHMENT A-1

### PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 21, United States Code, Sections 952, 960, and 963, Unlawful importation of a Controlled Substance (and Conspiracy to do the same) (the **Target Offenses**) is:

> One Black Huawei Smart Phone w/ Cracked Glass Back
> Seized as FP&F No. [2020-2506-000464-01]
> (**Target Device 1**)

**Target Device 1** is currently in the possession of Homeland Security Investigations, 880 Front Street, Suite 3200, San Diego, CA 92101.



## ATTACHMENT B-1

### ITEMS TO BE SEIZED

Authorization to search **Target Device 1** described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of **Target Device 1** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from **Target Device 1** be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 23, 2020, up to and including February 22, 2020:

a.  tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d.  tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, **Target Device 1**; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

## ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 21, United States Code, Sections 952, 960, and 963, Unlawful importation of a Controlled Substance (and Conspiracy to do the same) (the **Target Offenses**) is:

>   AT6 GPS Device
>   IMEI No. 353549090836106
>   Seized as FP&F No. [2020-2506-000464-01]
>   **(Target Device 2)**

**Target Device 2** is currently in the possession of Homeland Security Investigations, 880 Front Street, Suite 3200, San Diego, CA 92101.

## ATTACHMENT B-2

### ITEMS TO BE SEIZED

Authorization to search **Target Device 2** described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the GPS tracking device for evidence described below. The seizure and search of **Target Device 2** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Device 2** will be electronic records, communications, and data such as logs and location data, for the period of January 23, 2020, up to and including February 22, 2020:

a.    tending to indicate efforts to import methamphetamine, or some other federally controlled substance from Mexico into the United States;

b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.    tending to identify the user of, or persons with control over or access to, **Target Device 2**; and/or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.